UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT GOSS, JR.,

                                                        Civil Action No.12-cv-11158
             Plaintiff,             HONORABLE GERSHWIN A. DRAIN

v.

ABN AMRO MORTG. GRP., LLC,
*et al.*

            Defendants,

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [#4]**

I.    Introduction

Plaintiff's suit arises out of foreclosure proceedings on residential property located at 6263 Malvern, Troy, Michigan ("Property"). It alleges state-law claims against Defendants, ABN AMRO Mortg. Grp., LLC ("AMRO Mortgage") and CitiMortgage, Inc. ("CitiMortgage"). This mortgage-related dispute comes before the Court on Defendants' motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). Upon review of Defendants' Motion to Dismiss and Plaintiff's Response in Opposition, the Court concludes that oral argument will not aid in the disposition of this matter and resolves the pending motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

Plaintiff's complaint alleges that Defendants: (1) lack standing and subject matter

jurisdiction in the instant matter because the subject loan was securitized after the loan origination, thereby conveying all of its interest in both the note and the mortgage (Count I); (2) violated Michigan's recording statutes, MICH. COMP. LAWS §§ 565.25 and 600.2907a, because the Defendants wrongfully initiated a foreclosure without proper standing to assign, foreclose on, or take any action to enforce the mortgage on the Property (Count II); (3) Quiet Title on the Property (Count III); (4) committed a Fraudulent Conveyance violating Mich. Comp. Laws § 565.371 (Count IV); (5) breached the terms of the modification agreement and should be required to comply with the terms of the agreement via an injunction (Counts V and VI); (6) violated M.C.L. § 600.3205a *et seq.*, because Defendant failed to follow the enumerated borrower notification guidelines set forth in the statute (Count VII); and (7) Defendants violated their duty of good faith in servicing the loan causing Plaintiff to suffer damages such as improper default of his mortgage loan, foreclosure of his home, and pain and suffering (Count VIII).

For the reasons stated below, this Court GRANTS Defendants' Motion to Dismiss.

## II.    Factual Background

Plaintiff, a laid off automobile employee, fell behind on his mortgage payments on property located at 6263 Malvern, Troy, Michigan. The mortgage was originated by AMRO Mortgage and serviced by CitiMortgage[1], which commenced foreclosure on the Property on September 23, 2011. *See* Def's. Mot. To Dismiss, Pg. 10.   Before the foreclosure, Plaintiff attempted to modify the mortgage under the Home Affordable Modification

---

[1] AMRO Mortgage merged into CitiMortgage on August 31, 2007, pursuant to the laws of the State of New York.  *See* Def.'s Mot. to Dismiss, Ex. C. Thus, the Court will refer to the Defendants, AMRO Mortgage and CitiMortgage, as a single Defendant or CitiMortgage.

-2-

Program ("HAMP"). Plaintiff was being considered for the HAMP program; however, Defendant CitiMortgage never signed the trial period plan. Compl. ¶8; *See also* Compl., Ex. 1.

While being considered for the HAMP, Plaintiff made 22 consecutive payments at the modified rate of $486.70. *See also* Comp. Ex. 3. Plaintiff asserts that after his timely monthly payments, Defendant refused to accept his March 19, 2011, modification payment.

Instead, on April 1, 2011, CitiMortgage sent Plaintiff a letter stating that the check was being returned "because it was less than the full amount due to bring [the] account current." Compl. Ex. 4. Plaintiff was also advised to contact the Defendant to discuss resolving the default. *Id.* Plaintiff continued attempts to obtain a permanent modification by contacting the Defendant; however, on June 20, 2011, Trott & Trott, P.C. sent Plaintiff a notice on behalf of Defendant that Defendant was exercising its right to accelerate the total indebtedness. *See* Compl. Ex. 5.

Plaintiff's attorney contacted CitiMortgage to setup a meeting to discuss mediation for the loan pursuant to MICH. COMP. LAWS § 600.3205(b), but the parties never met. Subsequently, the Property was sold on October 25, 2011, at a sheriff's sale. The redemption period expired on April 25, 2012.

III.  Law & Analysis

  A.  Standard of Review

Federal Rule of Civil Procedure12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 679.

B.  Count I Standing and Subject Matter Jurisdiction

Defendant first argues that Plaintiff's allegations suggesting that Defendant CitiMortgage lacked standing to foreclose is without merit. Defendant argues that as the successor by merger, it properly foreclosed pursuant to MICH. COMP. LAWS § 600.3204(1)(d) , which in relevant part states that "[t]he party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage."

The Plaintiff, relying on testimony given at a U.S. House of Representatives subcommittee, seems to suggest that the Defendant doesn't have standing to bring the foreclosure action because it conveyed all of its rights and interests in the mortgage and note to its successor in the securitization process. *See* Compl. ¶ ¶ 23-25. There is no merit to this argument.

First, the Plaintiff does not provide, nor is the Court aware of, any legal support for his mortgage securitization proposition. The Plaintiff erroneously relies on subcommittee testimony that is not binding on this Court. Moreover, attempts to base claims on the securitization of a mortgage and the alleged separation of the mortgage and note have not been well received by courts around the country. *See Leone v. Citigroup,* No. 12–10597, 2012 WL 1564698, at *3–4 (E.D.Mich. May 2, 2012) (collecting cases); *Mitchell v. Mortgage Electronic Registration Systems, Inc.,* No. 1:11–cv–425, 2012 WL 1094671, at *2–3 (W.D.Mich. Mar.30, 2012); *Bhatti v. Guild Mortg. Co.,* No. C11–0480JLR, 2011 WL 6300229, at *5 (W.D.Wash. Dec.16, 2011) ("Securitization merely creates a separate contract, distinct from the Plaintiffs' debt

obligations under the Note, and does not change the relationship of the parties in any way."). Courts in this district have found such arguments singularly unpersuasive in light of the *Residential Funding Co., LLC, v. Saurman, 490 Mich. 909 (2011)* decision. *See Nelson v. BAC Home Loans Servicing, L.L .P.,* No. 11–14433, 2012 WL 2064383, at *4 (E.D.Mich. June 7, 2012); *Marrocco v. Chase Bank, N.A.,* No. 12–10605, 2012 WL 3061031, at *3 (E.D.Mich. July 26, 2012); *Kiefer v. ABN AMRO,* No. 12–10051, 2012 WL 3600351, at *4 (E.D.Mich. June 12, 2012).

In *Residential Funding,* the Michigan Supreme Court held that an entity that held the mortgage but not the note could foreclose under Michigan's foreclosure-by-advertisement statute. *Residential Funding,* 490 Mich. at 910. In so holding, the court observed that "[i]t has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands. The choice of a mortgagee is a matter of convenience." *Id.* (internal quotation and alteration omitted).

Thus, to the extent Plaintiff argues that an alleged securitization of the indebtedness invalidates Defendant's interest in the mortgage and therefore its standing to bring a foreclosure action, such an argument fails as a matter of law.

Futhermore, the Michigan Supreme Court has stated that a servicing agent is in the category of parties delineated by MICH. COMP. LAWS § 600.3204(1)(d) as one that has an "interest in the indebtedness" of a mortgage on property foreclosed by advertisement. *Residential Funding Co., LLC,* at 910.

The Plaintiff does not dispute, (indeed he alleges it in his complaint) that CitiMortgage was the servicer of the mortgage. *See* Compl. ¶ 7. Taking those

allegations in the complaint as true, the Plaintiff's argument that the Defendant has no standing to foreclose on the subject property is without merit.

Following this reasoning, all of the plaintiff's claims must fail, as explained below.

### C. Count II Fraud upon the Court

In Count II of the complaint, the Plaintiff alleges the Defendant defrauded the court by initiating a foreclosure action on the Property after it had sold the mortgage to another party. *See* Compl. ¶ 27. The elements of fraud in Michigan are: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, (1976). When a contract governs the relationship between the parties, the plaintiff must allege a "violation of a legal duty separate and distinct from the contractual obligation" to support a fraud claim. *Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.,* 454 Mich. 65, 84 (1997).

In federal court, when alleging fraud, a party must state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b); *see also Bennett v. MIS Corp.,* 607 F.3d 1076, 1100 (6th Cir.2010). The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.,* 583 F.3d 935, 942–43 (6th Cir.2009) (internal quotations and citation omitted). In addition, a party must "allege the time, place, and

content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993) (internal quotations and citations omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Here, as discussed above, AMRO Mortgage had proper standing to foreclose on the Property under MICH. COMP. LAWS § 600.3204(1)(d), as both the owner of the indebtedness upon its merger with Citimortgage and as the original mortgage servicer. The Plaintiff has not set forth any other allegations that would render the foreclosure wrongful under Michigan law. Therefore, Count II of the complaint will be dismissed.

### D. Count III Quiet Title

In Count III of the complaint, the Plaintiff alleges that he is entitled to have title to his home quieted in himself. Compl. ¶ 41. In Michigan, a Quiet Title action is governed by MICH. COMP. LAWS § 600.2932 (1), which states that:

> Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff. . ."

That statute "codifie [s] actions to quiet title and authorize[s] suits to determine competing parties' respective interests in land." *Republic Bank v. Modular One LLC,* 232 Mich.App. 444, 448 (1998), overruled on other grounds by *Stokes v. Millen Roofing Co.,* 466 Mich. 660 (2002). The burden of proof is on the party seeking to establish clear title in a quiet title action and that party must make out a prima facie case that they have title

to the disputed land. *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd. Comm'n,* 236 Mich.App. 546, 550 (1999) (citing *Stinebaugh v. Bristol,* 132 Mich.App. 311(1984)). If the plaintiff establishes a *prima facie* case, the burden of proof shifts to the contestant to establish superior right or title to the property. *Beulah,* 236 Mich.App. at 550 (citing *Boekeloo v. Kuschinski,* 117 Mich.App. 619, 629 (1982)). An action to quiet title is an equitable action. *Id.* If a defendant fails in its proof and "the plaintiff established his title to the lands, the defendant shall be ordered to release to the plaintiff all claims thereto." MICH. COMP. LAWS § 600.2932(3).

Under Michigan law, once the redemption period is expired, the previous owner's right, title, and interest in property are extinguished upon the expiration of the redemption period. *Pitrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942). If a plaintiff wishes to set aside a foreclosure sale, a plaintiff must show that some type of "fraud, accident, or mistake" occurred. *Freeman v. Wozniak*, 241 Mich. App. 633, 637 (2000). "Moreover, the fraud, accident, or mistake must relate to the foreclosure proceeding itself." *Stein v. U.S. Bancorp*, No. 10-14026, 2011 WL 740537, at *6 (E.D. Mich. Feb. 24, 2011).

Here, the Plaintiff has not made any allegations that would support a finding of fraud, accident, or mistake in the foreclosure process. As previously held, the Defendant had standing to foreclose as the servicer of the mortgage. Plaintiff has not alleged any irregularity in the foreclosure process itself. Therefore, Count III will also be dismissed.

E. Count IV Fraudulent Conveyance

In Count IV, Plaintiff alleges that Defendant violated MICH. COMP. LAWS §

565.371 by concealing that it sold its interest in the property and illegally continued with the foreclosure by advertisement process on behalf of the new owner. See Compl. ¶¶ 46-49. The Defendant argues, and the Court agrees, that the Plaintiff continues on the same misguided vein that the foreclosure by advertisement was somehow improper and that the alleged fraudulent conveyance resulted from it. Def.'s Resp. Pg.17. For the reasons set forth above, Count IV is dismissed as well.

### F. Count V Breach of Contract and Count VI Promissory Estoppel

Plaintiff further alleges that the "Home Affordable Modification Trial Period Plan" that he executed on August 10, 2009, was an enforceable contract requiring Defendant to modify his mortgage loan once he complied with its terms, that he did comply with all terms, and Defendant breached that contract when it failed to modify the mortgage loan. Compl. ¶ ¶ 51-55. Defendant argues that the Plaintiff never had a contract because the Michigan statute of frauds prohibits enforcement of an oral promise against a financial institution. Def.'s Resp. Pg. 18; MICH. COMP. LAWS § 566.132(2). This Court agrees with the Defendant. The Michigan Court of Appeals rejected a breach of contract argument similar to Plaintiff's under substantially similar circumstances.

In *Voydanoff v. Select Portfolio Serv., Inc.*, No. 298098, 2011 WL 6757841 at *1 (Mich. Ct. App. Dec. 22, 2011), the plaintiff filed suit against his mortgage loan servicer and others after he defaulted on his mortgage loan and his residential property was subsequently subjected to foreclosure proceedings and sold at a sheriff's sale. Among other claims, the plaintiff alleged that the mortgage loan servicer breached an agreement to modify his mortgage loan. The "Trial/Permanent Modification Agreement"

that the plaintiff relied upon for this claim was described by the court as a "proposal." 2011 WL 6757841 at *6. The court observed that the plaintiff had signed the document but the mortgage loan servicer had not. *Id.* The Michigan Court of Appeals rejected the plaintiff's breach of loan modification agreement claim and concluded that the "loan modification proposal" from plaintiff's mortgage loan servicer "did not ripen into a binding agreement, primarily because [it] bears only [the plaintiff]'s signature, and therefore, does not objectively reflect a meeting of the minds regarding the essential modification terms." 2011 WL 6757841 at *7. The same rationale and result apply here.

Plaintiff claims Defendant breached a contract to modify his mortgage loan. The document he claims was breached is titled "Home Affordable Modification Trial Period Plan (Step one of Two-Step Documentation Process)." Def's. Mot. to Dismiss, Ex. D. That document expressly states that the Trial Period Plan is not a loan modification and Plaintiff's loan documents would not be modified "unless and until" Plaintiff met all the conditions for modification, including the receipt of a fully executed copy of a Modification Agreement. *Id.* at 3, ¶¶ 2.F, 2.G. When Plaintiff signed this document, he acknowledged that it did not promise that his mortgage and note would be modified. Rather, it was merely an offer to do so if certain conditions were met:

> If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income. . . to determine whether I qualify for *the offer described in the Plan* (the "Offer"). I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.

*Id.* at 2 (emphasis added).

I understand that the [Trial Period] Plan is not a modification of the Loan

-11-

> Documents and that the Loan Documents will not be modified unless and until (I) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

*Id.* at 3, ¶ 2.G.

Therefore, similar to the plaintiff in *Voydanoff*, Plaintiff cannot support a claim that Defendant breached an agreement to modify his mortgage loan. The Court agrees with the Defendant that it is undisputed that Defendant did not sign the Trial Period Plan. *See* Compl. Ex. 2.; Def.'s Mot. to Dismiss, Pg. 18. Thus, the loan modification offer he signed "did not ripen into a binding agreement, primarily because [it] bears only [the plaintiff]'s signature, and therefore, does not objectively reflect a meeting of the minds regarding the essential modification terms." *Voydanoff*, 2011 WL 6757841 at *7.

Moreover, Defendant also contends that the Plaintiff's claim would fail under MICH. COMP. LAWS § 566.132 , which governs "[a] greements, contracts, or promises required to be in writing and signed; enforcement [.] Subsection 2 provides:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

> (3) As used in subsection (2), "financial institution means a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act.

MICH. COMP. LAWS § 566.132(2).

"[T]he Legislature used the broadest possible language in MICH. COMP. LAWS § 566.132(2) to protect financial institutions by not specifying "actions" it prohibits, eliminating the possibility of creative pleading to avoid the ban." *Crown Technology Park v. D & N. Bank*, 242 Mich. App. 538, 551 (2000). Here, there is no dispute that CitiMortgage is a financial institution. *See* Def's. Mot. to Dismiss, Ex. 8 (FDIC Report). It is also clear that the premise which forms the basis of Plaintiff's promissory estoppel claim (Count VI) relate to a promise to modify a loan. This oral promise falls directly within the express language of MICH. COMP. LAWS § 566.132(2)(b) and (c). Therefore, Plaintiff cannot bring a promissory estoppel claim, and that claim must also be denied.

G. <u>Count VII Non-Compliance with Foreclosure by Advertisement Statute, MICH. COMP. LAWS § 600.3205a</u>

Plaintiff alleges, pursuant to MICH. COMP. LAWS § 600.3205, that the Defendant failed to strictly comply with the foreclosure by advertisement statute because it did not give Plaintiff the opportunity to attend a mediation hearing prior to the sheriff's sale. Pl.'s Resp. Brief, Pg. 18. Plaintiff contends that he complied with MICH. COMP. LAWS § 600.3205a(1)(d) by contacting Defendant through Plaintiff's attorney, on June 23, 2011, requesting a meeting in conformity with the provisions of MICH. COMP. LAWS § 600.3205a, which provided before December 22, 2011, in relevant part:

> (1) Subject to subsection (6), before proceeding with a sale under this

chapter of property claimed as a principal residence . . . , the foreclosing party shall serve a written notice on the borrower that contains all of the following information:

(a) The reasons that the mortgage loan is in default and the amount that is due and owing under the mortgage loan.

(b) The names, addresses, and telephone numbers of the mortgage holder, the mortgage servicer, or any agent designated by the mortgage holder or mortgage servicer.

(c) A designation of 1 of the persons named in subdivision (b) as the person to contact and that has the authority to make agreements under [MICH. COMP. LAWS 600.3205b and 600.3205c].

(d) That enclosed with the notice is a list of housing counselors prepared by the [MSHDA] and that within 14 days after the notice is sent, the borrower may request a meeting with the person designated under subdivision (c) to attempt to work out a modification of the mortgage loan to avoid foreclosure and that the borrower may also request a housing counselor to attend the meeting.

(e) That if the borrower requests a meeting with the person designated under subdivision (c), foreclosure proceedings will not be commenced until 90 days after the date the notice is mailed to the borrower.

(f) That if the borrower and the person designated under subdivision (c) reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if the borrower abides by the terms of the agreement.

(g) That if the borrower and the person designated under subdivision (c) do not agree to modify the mortgage loan but it is determined that the borrower meets criteria for a modification under [MICH. COMP. LAWS § 600.3205c(1)] and foreclosure under this chapter is not allowed under [MICH. COMP. LAWS § 600.3205c(7)], the foreclosure of the mortgage will proceed before a judge instead of by advertisement.

(h) That the borrower has the right to contact an attorney, and the telephone numbers of the state bar of Michigan's lawyer referral service and of a local legal aid office serving the area in which the property is situated.

  (2) A person who serves a notice under subsection (1) shall enclose with the notice a list prepared by the [MSHDA] under [MICH. COMP. LAWS § 600.3205d] of the names, addresses, and telephone

> numbers of housing counselors approved by the United States department of housing and urban development or the [MSHDA].

The Plaintiff has not disputed that the Defendant has complied with all the provisions set forth in MICH. COMP. LAWS § 600.3205a, with the exception of setting up a meeting pursuant to MICH. COMP. LAWS § 600.3205a(e). *See* Pl.'s Resp., Pg. 18.

Furthermore, Defendant waited for 14 days for Plaintiff to contact it through a housing counselor to request a modification meeting, thus Defendant complied with MICH. COMP. LAWS 600.3204(4)(b). In fact, the Defendant did not commence foreclosure proceedings for more than 90 days after the notice was sent. *See* Compl. Ex. 6; Def.'s Mot. to Dismiss, Pg. 22. Plaintiff never requested a meeting as expressly provided in former MICH. COMP. LAWS § 600.3205b(1), which provided:

> *A borrower who wishes to participate in negotiations to attempt to work out a modification of a mortgage loan **shall** contact a housing counselor from the list provided* under [MICH. COMP. LAWS 600.3205a] within 14 days after the list is mailed to the borrower. Within 10 days after being contacted by a borrower, *a housing counselor shall inform the person designated under [MICH. COMP. LAWS 600.3205a(1)(c)] in writing of the borrower's request*. [Emphasis added.]

Furthermore, the Michigan Appeals Court held in *Vasilakis v. Trott & Trott P.C. & Home Loan Servs.*, No. 306122, 2012 Mich. App. Lexis 2251 at *10 (Nov. 15, 2012), that "'[s]hall' is a mandatory term. *Manuel v. Gill*. 481 Mich. 637, 647; 753 N.W. 2d 48 (2008). According to the plain language of the statute, plaintiff could not request a meeting personally, through a retained attorney. . . The request had to come from an authorized housing counselor.[2] In *Vasilakis,* the plaintiffs defaulted on a mortgage loan

---

[2] The statute was amended in 2011, and now permits a homeowner to personally contact the lender's designated agent to request a loan modification meeting. MICH. COMP. LAWS § 600.3205(b)(1), as amended by 2011 PA 302.

-15-

and foreclosure proceedings commenced. *Id.* at *1-2. The plaintiff in *Vasilakis* received an acceleration notification that complied with MICH. COMP. LAWS § 600.3205a(1) and (4) informing them that they must request a meeting with the Defendant's designated agent to attempt to work out a modification and to avoid foreclosure "by contacting a housing counselor from the list provided." *Id.* at *2. Instead, the plaintiffs personally contacted the designated agent and subsequently retained an attorney who also contacted the agent. *Id.* at *3.

Here, like the defendant in *Vasilakis*, the statutes were not violated by the Defendant. The foreclosure sale was conducted pursuant to the statutory provisions. Plaintiff did not contact an authorized housing counselor and no housing counselor contacted Defendant on Plaintiff's behalf from the list provided under MICH. COMP. LAWS § 600.3205a within 14 days after a list was mailed to the borrower. Therefore, Count VII must be dismissed.

G. Count VIII Bad Faith

Lastly, in Count VIII of the Complaint, Plaintiff asserts that Defendant owed a duty to him to "act in good faith and in accordance with applicable law in servicing Plaintiff's loan including a legitimate review for loss mitigation options and complying with the express terms of the trial modification contract," and to not "fraudulently represent the ownership interest of the mortgage." Compl. ¶ 68. Contrary to Plaintiff's bad faith allegations, Defendant argues that it reviewed Plaintiff's loan modification "multiple times" and waited more than two years after Plaintiff defaulted to properly

foreclose by advertisement. Def.'s Mot. to Dismiss, Pg. 23. Defendant also argues, and the Court agrees, that Michigan does not recognize an independent cause of action for bad faith. *Fodale v. Waste Management of Michigan, Inc.*, 271 Mich.App. 11, 35, (2006) (*citing* Belle Isle Corp. V. Detroit, 256 Mich.App. 463, 476 (2003). Therefore, Plaintiff's claim of bad faith is dismissed.

IV. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss [#4] is Granted.

SO ORDERED.

Dated: November 29, 2012

/s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 29, 2012.

s/Tanya Bankston
TANYA BANKSTON
Case Manager